UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODERICK LOWE, Personal Representative of the
Estate of ROBIN HACKNEY, Deceased,

      Plaintiff,

v.

CORRECTIONAL MEDICAL SERVICES, Inc., et al.,    Case No. 08-11233
                                                      Honorable Julian Abele Cook, Jr.
      Defendants.

## ORDER

The issues in this civil rights lawsuit involve accusations by the Plaintiff, Roderick Lowe, who maintains that the untimely death of Robin Hackney, while serving as an inmate at the Mound Correctional Facility in Michigan, was caused by the misconduct of the Defendants[1] in violation of the Decedent's protected rights under 42 U.S.C. § 1983. On September 2, 2009, two of the Defendants, CMS and Pharmacorr, filed a motion for judgment on the pleadings, or in the alternative, the entry of a summary judgment, both of which are now before the Court for decisions.

I.

Hackney was a forty-nine year old inmate in the custody of the Michigan Department of Corrections (MDOC) at the time of his death on December 15, 2005. Lowe, acting in his capacity as the Personal Representative for Hackney's Estate, contends that the Decedent's demise was

---

[1] The complaint identifies the Defendants as Correctional Medical Services, Inc. ("CMS"), Pharmacorr, LLC, Detroit Medical Center ("DMC"), Detroit Receiving Hospital and University Health Center, Dr. Trifun Dimitrijevski, Dr. Grant Orthmeyer, and several other individuals.

1

caused by one of two circumstances; namely, (1) an assault by prison personnel which caused him to suffer rib fractures and hemoperitoneum[2], or (2) death from an uncontrolled hypertension malady that remained untreated for more than a year which, in turn, caused him to suffer a fatal brain bleeding condition and/or cardiac arrhythmia. Lowe also advances the argument that "remaining discovery will flush out which of the two scenarios most likely occurred," and for the purposes of the instant motion, "focus[es] on the 2nd explanation for Decedent's death." (Pl. Br. at 3.)

Hackney was sentenced and placed into the custody of the MDOC on July 21, 1999. In 2004 and while serving as an inmate at the MDOC's St. Louis (Michigan) facility, he was given Vasotec, a blood pressure medication, which was ostensibly designed to alleviate his problems with hypertension. Hackney was also diagnosed with low thyroid levels which resulted in the administration of another medication, Synthroid. In December 2004, he was transferred from the St. Louis facility to the Mound Correctional Facility.

Notwithstanding the Defendants' contentions to the contrary, Lowe insists that Hackney's requests for medication were completely ignored from December 20, 2004 to the date of his death on December 15th of the following year. However, the Court notes that the only time period mentioned by Lowe in his complaint is "late November/ early December of 2005." (Pl.'s Complaint, ¶¶ 35-36.)

According to a MDOC Incident Report, Hackney was found in his jail cell on December 13, 2005, "shaking uncontrollably, incontinent of urine, [and] verbally unresponsive." (Pl. Ex. I). This Report further notes that Hackney's "pupils were fixed & dilated. . . . he was breathing rapidly, and he was bleeding from an injury on the left side of his head. *Id.* Thereafter, Hackney

---

[2] Hemoperitoneum refers to the presence of blood in the peritoneal cavity.

2

was transported to the Detroit Receiving Hospital (DRH), discharged and returned to the Mound Correctional Facility on the same day. The following day, on December 14th, the prison guards, after finding Hackney to be unresponsive once again, was returned him to the DRH. He was pronounced dead on December 15, 2005.

II.

In their motion, CMS and Pharmacorr collectively submit that the accusations within the complaint should be dismissed because Lowe has failed to connect any particular policy, practice, or procedure to either Defendant, which, when relied upon, resulted in the violation of Hackney's constitutional rights. In the alternative, these two movants argue that the entry of a summary judgment would be justified at this time because neither corporate entity had any personal involvement in the correctional institutions in which Hackney had been detained prior to his death.

Initially, each of the Defendants have petitioned this Court to issue an order of dismissal of the complaint under Federal Rule of Civil Procedure 12(c), which provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c)). A motion for judgment on the pleadings requires the court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, then determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Zigler v. IBP Hog Market,* 249 F. 3d 509, 511-12 (6th Cir. 2001).

A complaint must contain direct or inferential allegations regarding all of the material elements of a claim in order to sustain a recovery under some viable legal theory. *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). However, in those circumstances in which a complaint fails to advance a required element of a claim, the entry of an order of dismissal would

be appropriate. *Craighead v. E.F. Hutton & Co*, 899 F.2d 485, 489-90 (6th Cir. 1990).

    In their joint request for a judgment on the pleadings, CMS and Pharmacorr contend that it "is not enough for a Plaintiff to merely allege liability of a theory of *respondeat superior*," relying on the often-cited decision in *Monell v. Dep't of Social Services of New York City*, 436 U.S. 658, 691 (1978). In *Monell*, the Supreme Court opined in 1978 that, although local government units may be held liable under § 1983 for the deprivation of a citizen's fundamental rights, this federal statute did not support a *respondeat superior* claim of liability, reasoning that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion), the Supreme Court clarified the ruling under *Monell* eight years later when it declared that this "official policy" requirement does not preclude municipal liability "for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480, 106 S.Ct. 1292.

    Although *Monell* involved a municipality, it is clear that this holding extends to private corporations such as CMS and Pharmacorr. *Street v. Corrections Corporation of America*, 102 F.3d 810, 817-19 (6th Cir. 1996). Here, these two moving parties submit that the "Plaintiff's Complaint improperly seeks to hold Pharmacorr liable on a theory of *respondeat superior* for the alleged indifference of its alleged employees/agents." (Def. Br. at 7.) CMS and Pharmacorr also contend that Lowe has failed to identify a "particular" policy, practice, procedure, or custom which offended Hackney's civil rights. Notwithstanding the Defendants' argument, their collective contentions must be rejected. A close examination of the now-challenged complaint reveals allegations that (1) Pharmacorr had failed to refill Hackney's prescriptions in 2005, and (2) CMS had not properly

4

trained or supervised the medical personnel at the Mound CorrectionalFacility. However, both of these allegations facially satisfy the specificity requirements of *Monell* and Rule 12(c)). Thus and under the circumstances of this case, the Defendants' motion to dismiss must be denied.

### III.

In 1986, the Supreme Court opined that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). At the same time, the language within Fed. R. Civ. P. 56(c)) indicates that a motion for a summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." As such, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56(c)); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir.1984). Thus, it is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that

the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *Id.* at 252, or (2) the opponent fails to present evidence that is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). More importantly, it should be noted that the mere presentation of a scintilla of supporting evidence is insufficient to offset an otherwise sufficiently submitted request for dispositive relief. *See Anderson*, 477 U.S. at 252 (quoted in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

IV.

In their dispositive motions, CMS and Pharmacorr argue that they are entitled to a summary judgment, contending that neither of them possessed any "personal involvement" in those matters as set forth in the complaint.

A.  PHARMACORR

Pharmacorr asserts that it was not under any contract with the State of Michigan to provide pharmaceutical services to the detainees at the Mound Correctional Facility on or prior to the date of Hackney's death. Pharmacorr points out that (1) the allegations in the complaint relate only to the period of time between November 2005 and December 15, 2005, and (2) Hackney's response to the currently pending dispositive motion introduces factual allegations which date back to 2004 when he was housed at the St. Louis facility. Pharmacorr is correct when it contends that the complaint only refers to "late November/early December 2005" (Compl. at 8), and more

importantly, contains no mention of the St. Louis prison.

In its motion for summary judgment, Pharmacorr relies solely upon deposition testimony to support its contention that it was not responsible for filling prescriptions at the Mound Correctional Facility on or prior to Hackney's death. Unfortunately, none of the parties have provided the Court with any written contract between Pharmacorr and the MDOC which, if given, would arguably shed some light on their respective positions. In addition, Lowe submits that the notations on Hackney's medical records at the Mound Correctional Facility indicate that (1) his requests for prescription refills had been "faxed to Pharmacorr," and (2) these notes demonstrate that Pharmacorr did provide pharmaceutical services to the Mound Correctional Facility during all of the relevant times in this legal proceeding. Ordinarily these notations would be considered only a mere scintilla of evidence which would not create a material factual dispute. However, the discovery in this case has not yet closed, and the Court is troubled by the lack of written documentation that would specify the precise relationship between Pharmacorr, MDOC, and the Mound Correctional Facility. As such, the Court declines to rely solely on deposition testimony to determine the contours of the relationship between Pharmacorr and the MDOC. Thus, the Court concludes that a decision with regard to the entry of a summary judgment at this time would - at best - be premature.

B. CMS

CMS asserts that during the time period which has been alleged in the complaint (i.e., November and December 2005), it was under no legal obligation to provide staff physicians to those inmates who were incarcerated at the Mound Correctional Facility. Moreover, it contends that (1) the State of Michigan was solely responsible for providing medical care to the Mound

Correctional Facility inmates, and (2) the primary care physician (Dr. Seetha Vadlamundi) was a state employee during the relevant times period in this controversy.

Lowe disagrees, arguing that CMS' contract with the State of Michigan gave it the responsibility for providing medical care to all Michigan inmates. There is neither any distinction among the prisons in the contract nor is there any written evidence, contractual or otherwise, which purports to memorialize a commitment by the State of Michigan that it would assume responsibility for the medical staffing for the Mound Correctional Facility. However, it is undisputed that the actual medical staff at the Mound Correctional Facility during the fall months of 2005 were not CMS employees. On the other hand, it is not clear whether CMS retained responsibility for the larger and broader institutional policies, such as the establishment of the quantity of staff, the procedures to be followed, and the actual delivery of medical care.

In the complaint, Lowe maintains that (1) the challenged medical care was extremely flawed, and (2) there was a systemic problem in the delivery of medical care that led to Hackney's death. CMS' contract with the State of Michigan gave it responsibility for the health of all Michigan prisoners. (Pl. Ex. V.) The degree of responsibility that CMS retained for Hackney's care while he was at the Mound Correctional Facility is a factual dispute, and is not appropriate for resolution by the Court.

V.

For the reasons that have been stated above, the Court denies Defendants' motion in its entirety without prejudice.

IT IS SO ORDERED.

Dated:  February 5, 2010  
    Detroit, Michigan

S/Julian Abele Cook, Jr.  
JULIAN ABELE COOK, JR.

                              United States District Court Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 5, 2010.

                       <u>s/ Kay Doaks</u>
                       Case Manager